United States District Court
Southern District of Texas
**ENTERED**
December 10, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ONESUBSEA IP UK LIMITED, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4-16-0051 |
| | § | |
| FMC TECHNOLOGIES, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This patent case is before the Court on the Motion for Summary Judgment of
Non-Infringement ("Motion for Summary Judgment") [Doc. # 205] filed by
Defendant FMC Technologies, Inc. ("FMC"), to which Plaintiffs OneSubsea IP UK
Limited and OneSubsea UK Limited (collectively, "OSS") filed an Opposition [Doc.
# 209]. FMC filed a Reply [Doc. # 218], and OSS filed a Sur-Reply [Doc. # 221].

Also pending is FMC's Motion to Exclude the Infringement Opinions and
Testimony of Robert Voss ("Motion to Exclude") [Doc. # 226]. Plaintiffs filed an
Opposition [Doc. # 227], and FMC filed a Reply [Doc. # 228].

Having reviewed the full record and applicable legal authorities, the Court
**grants** both Motions.[1]

---

[1]     Also pending is FMC's Motion for Summary Judgment of Invalidity ("Invalidity
Motion") [Doc. # 211], to which OSS filed an Opposition [Doc. # 222], and FMC
filed a Reply [Doc. # 223]. Where, as here, Defendants raise invalidity only as an
affirmative defense, and not as a counterclaim, it is ordinarily not necessary for the
(continued...)

## I.    <u>BACKGROUND</u>

Plaintiff OneSubsea IP UK Limited is the owner by assignment of United States Patents No. 7,111,687 ("the '687 Patent"), 8,122,948 ("the '948 Patent") and 8,746,332 ("the '332 Patent") (collectively, the "Patents-in-Suit").  Plaintiff OneSubea UK Limited is an exclusive licensee.  The Patents-in-Suit relate to the recovery of production fluids from an oil or gas well, particularly through a connection system for subsea flow interface equipment.

Subsea "Christmas trees" ("trees") have long been used in the oil and gas industry to control the flow of oil and gas coming from a well.  The Christmas trees typically contain "fluid flow passages" or "bores" through which the fluid can flow from the well, through the tree, and onward toward the flowline.  The rate of fluid flow can be controlled through the use of a choke, either fixed or adjustable.

In low pressure wells, the pressure of production fluids may need to be increased.  In other circumstances, the production fluids may need to be treated. Installing a pump to increase pressure or a treatment apparatus on an active subsea well can be difficult and interrupts production.  Ian Donald, the named inventor for

---

[1]    (...continued)
Court to address validity once it has found noninfringement.  *See Solomon Techs., Inc. v. Int'l Trade Comm.*, 524 F.3d 1310, 1319 (Fed. Cir. 2008).  Because the Court grants FMC's Motion for Summary Judgment of Non-Infringement, the Invalidity Motion is **denied as moot**.

the Patents-in-Suit, invented systems and methods for installing a subsea pump or treatment apparatus that addressed these problems.  Figures in the Patents-in-Suit illustrate that in various embodiments, the fluid generally flows through the patented device along a flowpath through a branch of the tree that serves as an export line from the tree.  This path may include (as illustrated) a sharp turn into the branch, followed by a second, downward turn to the outlet.  *See, e.g.* Fig. 1 of the '687 Patent; Fig. 1 of the '948 Patent.  In such an embodiment, when a "diverter" is installed within the existing flowpath through the tree's branch, the fluid flows along the original flowpath, including the first turn.  As illustrated in several embodiments, when the fluid flow encounters the diverter, it is forced to change direction and makes a turn to flow upward to a flowpath different from the original flowpath.  *See, e.g.*, Fig. 24 of the '687 Patent; Fig. 20 of the '948 Patent.  The diverter blocks the original flowpath and forces the fluid flow to change direction to follow a different flowpath.  *See id.; see also* '687 Patent, col. 16, lines 9-12 (The "fluids are prevented from going downwards towards outlet **530** by seal **532**, so they are forced upwards in annulus **520**").

Defendant FMC markets an Enhanced Vertical Deepwater Tree ("EVDT") with a Retrievable Flow Module (the "Accused Device").  It is uncontested that the Accused Device is inoperable unless a Flow Module is attached.  When a Flow

Module is attached and the Accused Device is operable, fluid from a well flows along the pathway from the production bore, flows into a multi-bore hub in the EVDT, turns 90-degrees, flows into and through the Flow Module, then flows though a second bore into the multi-bore hub, where the fluid follows the pathway to make a 90-degree turn before flowing out of the tree toward another component of the well.  This is the only path along which the fluid can flow in the Accused Device.

OSS alleges that FMC's Accused Device, "a fully assembled and operational EVDT with a flow module," infringes the Patents-in-Suit.  *See* Response [Doc. # 209], p. 11; *see also id.* at 4 ("OSS's direct infringement theory is that FMC's fully assembled EVDT with an attached Retrievable Flow Module infringes").  Specifically, OSS alleges that FMC's Accused Device infringes Claims 1 and 3 of the '687 Patent.[2]

---

2       Claims 1 and 3 of the '687 Patent read (emphasis added):

1.      A tree for a well, having: a first flowpath; a second flowpath; and a flow **diverter** assembly providing a flow **diverter** means to **divert** fluids from a first portion of a first flowpath to the second flowpath, and means to **divert** fluids returned from the second flowpath to a second portion of the first flowpath for recovery therefrom via an outlet of the first flowpath, wherein the first portion of the first flowpath, the second flowpath and the second portion of the first flowpath form a conduit for continuous passage of fluid; wherein the flow **diverter** assembly is located in the first flowpath and separates the first portion of the first flowpath from the second portion of the first flowpath.

3.      The tree claimed in claim 1, including outlets for the first and second flowpaths to **divert** the production fluids to a treatment apparatus.

OSS claims also that the Accused Device infringes Claims 7 and 9 of the '948 Patent,[3]

[3]      Claims 7 and 9 of the '948 Patent read (emphasis added):

7.      A **diverter** assembly for a tree of an oil or gas well, comprising:
  a lateral branch having first and second branch bores with the first branch bore
    having a first port and the second branch bore having a second port, the
    first branch bore forming part of a first flowpath to and from a
    production bore of the tree and the second branch bore forming part of
    a second flowpath to and from an export line;
  a **diverter** having first and second internal passages, the first internal passage
    communicating with the first port and the second passage
    communicating with the second port;
  a processing apparatus having first and second passageways, the first
    passageway communicating with the first internal passage and the
    second passageway communicating with the second internal passage; and
  the **diverter** and processing apparatus communicating the first flowpath with
    the second flowpath.

9.      The flow **diverter** assembly of claim 7 wherein the processing apparatus is
    selected from the group consisting of at least one of a pump, process fluid
    turbine, gas injection apparatus, steam injection apparatus, chemical injection
    apparatus, materials injection apparatus, gas separation apparatus, water
    separation apparatus, sand/debris separation apparatus, hydrocarbon separation
    apparatus, fluid measurement apparatus, temperature measurement apparatus,
    flow rate measurement apparatus, constitution measurement apparatus,
    consistency measurement apparatus, chemical treatment apparatus, pressure
    boosting apparatus, and water electrolysis apparatus.

and Claim 11 of the '332 Patent.[4]  *See* Second Amended Complaint [Doc. # 188].

Each of these claims contains a "divert" limitation.

Following a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517

U.S. 370, 390 (1996), the Court construed the claim term "divert" and forms of that

term to mean that "the direction of the fluid's flow is forced to change from its current

flowpath to a different flowpath."[5]  *See* Memorandum and Order on Claim

Construction [Doc. # 147], p. 8.  The Court held specifically that "the fluid is not

---

[4]     Claim 11 of the '332 Patent reads (emphasis added):

11.     An assembly for a well having a tree with a production bore, comprising:
        a first flowpath comprising an outlet;
        a flow **diverter** comprising a second flowpath, the flow **diverter** to **divert**
            fluids from a first portion of the first flowpath to the second flowpath,
            and to **divert** fluids from the second flowpath to a second portion of the
            first flowpath, wherein the first portion of the first flowpath, the second
            flowpath, and the second portion of the first flowpath form a
            continuous passageway for fluid; and
        wherein the flow **diverter** is located in the first flowpath and separates the first
            portion of the first flowpath from the second portion of the first
            flowpath;
        wherein the fluids are directed to a treatment apparatus that is selected from
            the group consisting of pressure boosting apparatus, injection
            apparatus, materials injection apparatus, gas injection apparatus,
            chemical injection apparatus, chemical treatment apparatus, and
            measurement apparatus.

[5]     In connection with a number of *Inter Partes* Review ("IPR") proceedings involving
related OSS patents, the Patent Trial and Appeal Board ("PTAB") found this Court's
claim construction of the "divert" related claim terms to be "consistent with the plain
and ordinary meaning of 'divert' . . .."  *See, e.g.*, Final Written Decision as to United
States Patent No. 8,540,018, IPR2016-00328, PTAB June 14, 2017, Exh. B to
Motion, p. B70.  The Federal Circuit affirmed.  *See OneSubsea IP UK Ltd. v. FMC
Techs., Inc.*, 771 F. App'x 482, 483 (Fed. Cir. June 7, 2019).

'diverted' if the fluid simply moves through a single flowpath, even if the direction within the single flowpath changes." *Id*.

FMC filed the pending Motion for Summary Judgment, arguing that its Accused Device does not satisfy the "divert" limitation of the Patents-in-Suit. Specifically, FMC argues that since its Accused Device has a single flowpath, the direction of the fluid's flow is not "forced to change from its current flowpath to a different flowpath" as required by the Court's claim construction.

FMC also filed the Motion to Exclude, challenging the opinions of Robert Voss, OSS's expert, as lacking a reliable methodology. The motions have been fully briefed and are now ripe for decision.

## II.      MOTION TO EXCLUDE

### A.      Applicable Legal Standard

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury. FED. R. EVID. 702; *see, e.g., Whole Woman's Health v. Hellerstedt*, __ U.S. __, 136 S. Ct. 2292, 2316 (2016); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)*; *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).  To be admissible, an expert's proffered testimony must be both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822

F.3d 194, 199 (5th Cir. 2016).  The expert testimony must be relevant and the expert's proposed opinion must be one that would assist the trier of fact to understand or decide a fact in issue.  *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015); *Bocanegra v. Vicar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92).

To satisfy the "reliability" prong, a "party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss*, 571 F.3d at 452 (citing *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)); *see also Carlson*, 822 F.3d at 199.  "Reliability" requires that the proponent of the expert testimony must present some objective, independent validation of the expert's methodology.  *See Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013). The objective of the Court's gatekeeping role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

Courts often consider various factors in determining the reliability of proffered scientific evidence, including: (1) whether the theory or procedure has been subjected

to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance. *See Daubert*, 509 U.S. at 593-94. These factors can "help to evaluate the reliability even of experienced-based testimony." *Kumho Tire*, 526 U.S. at 151. "In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community." *Id*.

The Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157; *Burleson v. Tex. Dept. of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004); *Chan v. Coggins*, 294 F. App'x 934, 939 (5th Cir. Oct. 2, 2008). Where the challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). In such cases, there is "simply too great an analytical gap between the data and the opinion proffered." *Chambers v. Exxon Corp.*, 247 F.3d 240, *2 (5th Cir. Jan. 5, 2001) (quoting *Gen. Elec. Co. v. Joiner*, 422 U.S. 136, 146 (1997)). "A claim cannot stand or fall on the mere *ipse*

*dixit* of a credentialed witness." *McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017).

The Court's gatekeeping role is no substitute, however, for the adversarial process. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky *but admissible* evidence." *Daubert,* 509 U.S. at 596 (emphasis added); *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015).

**B.**   **Analysis**

***Voss's Qualifications.--***   Voss received a Bachelor of Science in Mechanical Engineering from Texas A&M University in 1979.   He is a retired engineer with over forty (40) years of experience in the design of subsea production equipment.   FMC does not challenge Voss's qualifications to serve as OSS's infringement expert.

***Claim Constructions.--***   The parties agreed that the claim term "tree" means "an assembly of pipes, valves and fittings installed between the wellhead and the flowline." Joint Claim Construction Chart [Doc. # 136-1].  The parties agreed that the "flowline" is "the pipeline extending outboard of the terminus of a subsea tree" and is the same as the "production flowline" and the "export line."  *Id.*

The Court construed the "divert" limitation to mean that "the direction of the fluid's flow is forced to change from its current flowpath to a different flowpath." *See* Memorandum and Order on Claim Construction, p. 8.  The Court noted further that "the fluid is not 'diverted' if the fluid simply moves through a single flowpath, even if the direction within the single flowpath changes."  *Id*.  The Court's construction recognized that the "divert" limitation requires an original flowpath that is disrupted by the "diverter" that forces the fluid flow to change direction to a different flowpath. As discussed above, many figures in the Patents-in-Suit demonstrate this.  For example, Figure 1 of the '687 Patent and Figure 1 of the '948 Patent show the original or "current" flowpath, with a sharp turn followed by a second turn downward toward the outlet.  Figure 24 of the '687 Patent and Figure 20 of the '948 Patent illustrate the different, diverted flowpath after the original flowpath encounters the diverter, at which point the fluid flow is forced to change direction, making an upward turn to a different flowpath.  *See, e.g.*, Fig. 24 of the '687 Patent; Fig. 20 of the '948 Patent; '687 Patent, col. 16, lines 9-12.

**Voss's Opinions.--**  Voss opines that the "divert" limitation is satisfied in the Accused Device because the multi-bore hub forces the fluid flow to change direction to flow toward the "Flow Module pipework," which Voss opines constitutes

a "different flowpath" from the pipework in the rest of the EVDT.[6]  *See* Voss Report,

Exh. C to Motion to Exclude, p. 23.  Voss opines specifically that "[b]ecause the Flow

Module is independently retrievable and contains its own pipework, . . . this separate

Flow Module pipework can be considered a second flowpath as that term is used and

understood by" a person of ordinary skill in the art ("POSITA").[7]  *Id.*  Voss thus

concludes that FMC's EVDT infringes the OSS patents.  *See id.* at 14.

      ***Relevance.--***  Voss's opinion lacks sufficient relevance, and is unlikely

to assist the trier of fact, because it does not properly consider the agreed construction

of the claim term "tree" and misinterprets the Court's construction of the claim terms

involving forms of the term "divert."  Expert opinions that are inconsistent with the

established constructions of claim terms are irrelevant and unhelpful to the factfinder.

*See, e.g., Mission Pharmacal Co. v. Virtus Pharm., LLC*, 2014 SL 12480016, *4

---

[6]      Voss in his Report offers the same opinions as to each of the three Patents-in-Suit.
*See* Voss Report, pp. 23, 56, 80.

[7]      FMC's expert, William C. Parks, states that a POSITA for this case would be a person
having "at least a bachelor's degree in mechanical or petroleum engineering and five
years of experience as a completion or sub-surface engineer or related work
experience in oil and gas completion systems."  Rebuttal Expert Report, Exh. 14 to
Reply [Doc. # 218], ¶ 13.  Voss, OSS's expert, identifies the POSITA for this case as
a person having "a bachelor's degree in mechanical or petroleum engineering and at
least three to five years of experience as a subsea tree design engineer or related work
experience."  Voss Report, p. 5.  There is no indication that the minor differences
between the two descriptions of a POSITA in this case has an impact on the issues
raised in the pending motions.

(W.D. Tex. Sept. 12, 2014); *Personalized User Model, L.L.P. v. Google, Inc.*, 2014 WL 807736, *1 (D. Del. Feb. 27, 2014).

Voss in his Report did not indicate that he was aware of the parties' agreed construction of the claim term "tree."  Indeed, Voss testified in his deposition that he did not recall having seen a construction of the term "tree."  *See* Voss Deposition, Exh. D to Response [Doc. # 227], p. 108.  Apparently because he did not know the parties agreed that the claim term "tree" included all the "pipes, valves and fittings installed between the wellhead and the flowline," he based his opinion and testified that the tree is "a separate assembly from the flow module."[8]  *See id.* at 107.  Based on that misapplication of the claim term "tree," Voss states that the fluid enters a second, different flowpath when it enters the Flow Module because the fluid is "routed out and then back into the system."  *See id.*  This misapplication of the claim term forms a basis for his opinion that the flowpath inside the Flow Module is a second, different flowpath.  *See id.*  Therefore, Voss's opinion that there is a second flowpath should be excluded because it is based on a definition of "tree" that is inconsistent with the parties' agreed construction.

---

[8]     Voss recognized in his Report that the Flow Module "is incorporated into" the EVDT. *See* Voss Report, p. 20.  It is undisputed that the EVDT is located between the wellhead and the flowline and, indeed, EVDT is an acronym for Enhanced Vertical Deepwater *Tree*.

Voss's infringement opinion regarding the presence of the "divert" limitation appears based also on a misinterpretation of the Court's construction of that claim term. Voss does not identify an original or current flowpath from which the fluid flow is forced to change, going instead into a different flowpath.[9] It is clear from the undisputed factual record that fluid flows along only one path in the Accused Device (the EVDT with a Flow Module attached). Voss opines that the pipework in the Flow Module is a second, different flowpath, but fails to identify the original flowpath from which there is a forced change of direction. Voss opines that the multi-bore hub is the "diverter," but there is nothing in the multi-bore hub that disrupts the current fluid flow to force it to follow a different flowpath. Instead, the single flowpath in the multi-bore hub contains a turn. The Court's claim construction, however, specifically precludes the existence of the "divert" limitation based only on the change of direction within a single flowpath. Based on this misapplication of the Court's claim construction, Voss's infringement opinion is irrelevant and excluded under Rule 702.

In summary, Voss's opinion that "[b]ecause the Flow Module is independently retrievable and contains its own pipework, . . . this separate Flow Module pipework can be considered a second flowpath" (Voss Report, p. 23), is not supported by the

---

[9]     Voss in his Report cites the Court's claim construction, highlighting the entire construction except the requirement for the fluid's flow to change "from its current flowpath." *See* Voss Report, p. 6.

patent language as construed by the Court and the parties.  For these reasons, Voss's misapplication of the established claim constructions in this case render his opinions excludable under Rule 702 and *Daubert* as irrelevant and not likely to assist the trier of fact.

*Reliability.--*  In support of his opinion that the pipework in the Flow Module is a second, different flowpath, Voss relies on FMC documents that show the Flow Module can be removed from the rest of the EVDT, and on OSS's Final Infringement Contentions.  Voss repeatedly states summarily that a POSITA would understand the Flow Module pipework to be a second flowpath.  *See, e.g., id.* at 25 ("This second set of pipework is independently retrievable from the Accused EVDT and is therefore a separate flowpath.").  Voss offers no methodology, no peer-reviewed publication, and no recognized industry practice, however, to support his subjective opinion that the flowpath through the Flow Module can be considered a second, *different* flowpath simply because the Flow Module can be removed from the EVDT.[10]  The absence of a reliable methodology was revealed during Voss's deposition.  Voss testified that a device with a section that "is designed to be removed by divers in shallow water" would have two flowpaths but, in "the exact same

---

[10]     FMC's expert stated in his Rebuttal Report that he is "not aware of any support for [Voss's opinion that separate pipework and retrievability constitute a second flowpath] in the Asserted Patents, in industry literature, or in [his] decades of experience."  *See* Parks Rebuttal Report, ¶ 47.

situation" except that the device is in "water that is too deep to be reached by divers," Voss testified that the same device has only one flowpath.  *See* Voss Depo., p. 148. The "infringement of an apparatus claim cannot depend on the location at which the apparatus is being used." *Beverage Dispensing Sols., LLC v. Coca-Cola Co.*, 2014 WL 11412882, *5 (N.D. Ga. Dec. 18, 2014), report and recommendation adopted as modified, 2015 WL 10963979 (N.D. Ga. Feb. 27, 2015).

OSS in its opposition to FMC's Motion to Exclude argues that FMC's Rule 30(b)(6) representative admitted that the Flow Module pipework "corresponds to the flow path for the fluid within the flow module."  *See* Response [Doc. # 227], p. 7 (citing Deposition of Paulo Couto, Exh. A to Response, p. 70).  Couto does not, however, admit that the pipework of the Flow Module is a separate or different flowpath from that in the EVDT.[11]  Couto's deposition testimony does not support OSS's position that Voss's opinions are reliable.

Based only on the undisputed facts that the Flow Module is retrievable and has separate pipework, Voss opined that the flowpath through the Flow Module is a second, different flowpath than the path through which the fluid flows elsewhere in the EVDT.  Neither Voss nor OSS identifies any methodology employed by Voss that explains how he made the leap from the undisputed fact to the proffered opinion.

---

[11]    Couto defined a flowpath as "the path of the fluid through [the] equipment."  *See* Couto Depo., p. 80.  OSS has not suggested a different definition of a "flowpath."

There is "simply too great an analytical gap between the data and the opinion proffered." *Chambers v. Exxon Corp.*, 247 F.3d 240, *2 (5th Cir. Jan. 5, 2001) (quoting *Gen. Elec. Co. v. Joiner*, 422 U.S. 136, 146 (1997)).  Because neither Voss nor OSS offers a reliable methodology to bridge that gap, Voss's opinion regarding the existence of a second, different flowpath in the Accused Device is inadmissible under Rule 702 and *Daubert*.

## C.   Conclusion on Motion to Exclude

Voss's opinions fail to consider the parties' agreed construction of the claim term "tree," and they are based on a construction of the claim term "divert" that is inconsistent with this Court's construction of that term.   Additionally, Voss's infringement opinions lack reliable methodology.  These opinions are inadmissible under Rule 702 and *Daubert* because they lack the required relevance and reliability, and they are more likely to confuse than assist the jury in deciding the infringement issue.

The Court does not base its ruling on a consideration of whether Voss's infringement opinions are correct or incorrect, or whether competing opinions are more persuasive.  Instead, the Court bases its ruling on the absence of sufficient relevance and reliability, which render the opinions unlikely to assist the jury.  *See*

*Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).  The Court **grants** the Motion to Exclude Voss's infringement opinions and testimony.

### III.   <u>MOTION FOR SUMMARY JUDGMENT</u>

#### A.   <u>Applicable Legal Standards</u>

***Summary Judgment Standard.--***  Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits."  *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006).  Summary judgment on infringement is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Ultimatepointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816, 824 (Fed. Cir. 2016).  The infringement analysis at the summary judgment stage requires the Court to compare the patent claims, as construed, with the accused device.  *See Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1317 (Fed. Cir. 2016).

*Standard for Patent Infringement.--* "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a); *Lexmark Int'l, Inc. v. Impression Prods., Inc.*, 816 F.3d 721, 726 (Fed. Cir. 2016); *Int'l Bus. Machines Corp. v. Booking Holdings Inc.*, 775 F. App'x 674, 677 (Fed. Cir. May 22, 2019). "An infringement analysis has two steps." *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019) (citing *Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1326 (Fed. Cir. 2016)). In the first step, the Court construes the asserted claims. *Id.*

In the second step, the Court determines whether the accused product meets each limitation of the claim as construed. *See id.* The comparison is only to the patent claims, not to any specific embodiment in the patent specification or to the patent holder's commercial embodiment. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1347 (Fed. Cir. 2003); *Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989, 992 (Fed. Cir. Feb. 25, 2019). "The patentee has the burden of proving infringement by a preponderance of the evidence." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019).

## B. <u>Analysis</u>

OSS alleges that FMC's Accused Device literally infringes the Patents-in-Suit. Although OSS made passing reference to infringement under the doctrine of

equivalents in the Preliminary Infringement Contentions filed in 2015, the Final Infringement Contentions filed in 2019 do not assert a doctrine of equivalents theory. Similarly, OSS in the Second Amended Complaint [Doc. # 188], does not allege infringement under the doctrine of equivalents.

FMC argues that it is entitled to summary judgment of non-infringement because OSS has not presented evidence that raises a genuine issue of material fact regarding whether the Accused Device satisfies the "divert" limitations in the asserted claims of the Patents-in-Suit.  The "divert" limitation is the only limitation on which FMC bases its Motion for Summary Judgment of Non-Infringement.  Summary judgment of non-infringement is appropriate if "no reasonable jury could find that *every limitation* recited in a properly construed claim is found in the accused device." *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015) (emphasis added).  Therefore, "the absence of a single limitation is sufficient to defeat a claim for infringement."  *In re Sebela Patent Litig.*, 2017 WL 3449054, *15 (D.N.J. Aug. 11, 2017).

As noted above, the Court construed the claim term "divert" and forms of that term to mean that "the direction of the fluid's flow is forced to change from its current flowpath to a different flowpath."  Memorandum and Order on Claim Construction, p. 8.  The Court held clearly that "the fluid is not 'diverted' if the fluid simply moves

through a single flowpath, even if the direction within the single flowpath changes." *Id.*

It is undisputed that the fluid flow changes direction in the multi-bore hub in the Accused Device.  As noted above, however, the Court has ruled that a change in direction along a single flowpath is insufficient to satisfy the "divert" limitation.  Indeed, OSS concedes this point.  *See* Response [Doc. # 209], p. 21.  Therefore, the parties agree that the dispositive issue is whether the fluid flow changes from an ***original*** or ***current*** flowpath into a ***different*** flowpath.  FMC argues that there is only one flowpath in the Accused Device along which the fluid can flow.  Therefore, FMC argues, the fluid flow cannot be forced to change from its current flowpath to a different flowpath.

OSS argues that the pipework in the Flow Module constitutes a "different flowpath" from the pipework in the EVDT.  Therefore, OSS argues, the fluid flow changes direction in the multi-bore hub to flow from the pipework in the EVDT into a different flowpath created by the pipework in the Flow Module.  OSS has failed, however, to present admissible evidence to support this argument.[12]

Initially, there is no admissible evidence that different pipework alone can constitute a different flowpath.  OSS argues that FMC through Couto, its

---

[12]    OSS relied primarily on the Report and testimony of its infringement expert, Robert Voss.  As explained above, Voss's evidence is not admissible.

Rule 30(b)(6) witness, and Parks, its expert, admitted that the Flow Module pipework is its own flowpath. *See id.* at 5. The evidence does not support OSS's argument. In the cited deposition testimony, Couto testified that the Flow Module pipework "corresponds to the flow path for the fluid within the flow module." *See* Response [Doc. # 209], p. 5 (citing Deposition of Paulo Couto, Exh. 4 to Response, p. 70). OSS cites to Parks's testimony identifying a flowpath from the multi-bore hub back to the multi-bore hub. *See id.* (citing Deposition of Williams Parks, Exh. 1 to Response, p. 129). Neither Couto nor Parks testified that the pipework of the Flow Module is a separate or different "flowpath" from that in the EVDT.

Indeed, Parks testified clearly and unequivocally that there is "one single flowpath in and out. . . . there is only one flowpath. It's through the . . . dual bore hub[13] into the module, out of the module and back into the dual bore hub. There is no other way that fluid can go." Parks Depo., pp. 153-54. As Parks explained, there is only one flowpath throughout the EVDT because there is nowhere else the fluid can flow.

OSS fails to identify an original, non-diverted flowpath in the Accused Device that is different from the diverted flowpath. Instead, OSS relies on the argument that the pipework in the Flow Module is a different flowpath from the flowpath in the rest

---

[13]    The "dual-bore hub" to which Parks referred in his testimony is also referred to by others as the "multi-bore hub" in the Accused Device.

of the EVDT because the pipework is distinct and removable.  *See* Response, p. 2.  As noted above, OSS has presented no admissible evidence to support this argument.  The admissible evidence in the record, including the testimony of FMC's expert, is to the contrary.

### C.    Conclusion on Motion for Summary Judgment

OSS has failed to present admissible evidence of more than a single flowpath through the Accused Device such that the fluid flow can be forced to change direction from its current flowpath to a different flowpath.  Therefore, OSS has not raised a genuine issue of material fact regarding whether the Accused Device satisfies the "divert" limitations in the asserted claims of the Patents-in-Suit, as the term has been construed by the Court.  As a result, FMC is entitled to summary judgment of non-infringement.

## IV.    CONCLUSION AND ORDER

Voss's infringement opinions are not supported by reliable methodology, and they are based on Voss's failure to consider, or misinterpretation of, the claim construction of the terms "tree" and "diverter."  As a result, they fail to satisfy the reliability requirement of Rule 702 and *Daubert*.

OSS has failed to present admissible evidence that raises a genuine issue of material fact supporting its claim that FMC's Accused Device infringes the Patents-in-Suit.  As a result, it is hereby

**ORDERED** that FMC's Motion to Exclude the Infringement Opinions and Testimony of Robert Voss [Doc. # 226] is **GRANTED**.  It is further

**ORDERED** that FMC's Motion for Summary Judgment of Non-Infringement [Doc. # 205] is **GRANTED**.  It is further

**ORDERED** that FMC's Motion for Summary Judgment of Invalidity [Doc. # 211] is **DENIED AS MOOT**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 10th day of **December, 2020**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE